126 P.3d 821 (2005)
STATE of Washington, Respondent,
v.
Kenneth Lloyd GOBLE, Appellant.
No. 32647-7-II.
Court of Appeals of Washington, Division 2.
December 28, 2005.
Publication Ordered January 24, 2006.
Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.
*822 J. Andrew Toynbee, Lewis County Prosecuting Attorney's Office, Chehalis, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Kenneth Lloyd Goble appeals his jury conviction of third degree assault, arguing sufficiency of the evidence and instructional error. We conclude that although the evidence was sufficient to support the verdict, the instruction defining knowledge was confusing and allowed the jury to convict without finding all the necessary elements required. We further conclude that the instructional error was not harmless. Accordingly, we reverse and remand for further proceedings.

FACTS
¶ 2 The State charged Goble with third degree assault, alleging that on August 13, 2004, he assaulted Deputy Daniel Riordan while Riordan was performing his official duties.
¶ 3 At trial, Officer Jeremy Stamper of the Mossyrock Police Department and Deputy Riordan of the Lewis County Sheriff's Office testified that on the night of the incident they were working a special detail covering the annual Logger's Jubilee in Morton, Washington. Both officers were in uniform and both were carrying taser guns.
¶ 4 At approximately 11:15 p.m., they were dispatched to Shotgun Freddy's, a bar located on Morton's Main Avenue. When they arrived, they spoke to an enforcement officer from the Washington State Liquor Control Board, who reported that two men preparing to leave on a motorcycle had been involved in a dispute at the bar. The person driving the motorcycle was Goble, the passenger was his grandson.
¶ 5 The officers testified that when Stamper contacted the men and told them he needed to talk to them, Goble's grandson got off the motorcycle and ran "aggressively" toward him, screaming obscenities and threats. Report of Proceedings (RP) at 33. He continued to approach Stamper even though Stamper identified himself as a police officer and told him to stop several times. When Goble's grandson was about four feet from Stamper, Stamper attempted to deploy his taser, but Riordan, who was behind the man, deployed his taser first; the man fell to the ground.
¶ 6 As Stamper moved forward to help Riordan handcuff the man, he looked up and saw Goble reach up and grab Riordan in "somewhat of a clothesline type headlock." RP at 35. Riordan testified that as he passed the motorcycle, someone reached out and grabbed him by the throat. RP at 76. The two men struggled and Stamper shot Goble in the back with his taser.
¶ 7 Other officers then arrived, and Goble was handcuffed and transported to the Morton Police Department a few blocks away. Riordan testified that they quickly moved Goble and his grandson to the police station because the crowd was threatening. Stamper testified that the entire incident occurred in a matter of six to ten seconds.
¶ 8 Stamper also testified that while they were at the police station, Goble told him that his grandson was intoxicated and distraught after finding out that a friend of his had just been killed in an accident and that "they shouldn't have acted the way they did and they were sorry." RP at 39. He then told Stamper that he was just trying to "protect his grandson from being tased by Deputy Riordan." RP at 39.
¶ 9 But Riordan testified that when he was returning some property to Goble a few days later, Goble told him he had not realized who Riordan was when he grabbed him and he was only trying to stop someone from the crowd from going after his grandson, who was apparently not well liked. During this conversation, Goble did not deny putting him in a headlock.
¶ 10 The defense presented testimony from two women who had watched the incident from across the street. They testified that before the officers arrived, Goble's grandson had been fighting with others in front of the bar. They watched as Goble calmed his grandson and testified that the two men were attempting to leave when the officers arrived.
¶ 11 They stated that they did not see Riordan, but they watched as Stamper told *823 Goble's grandson to get off the motorcycle with his hands up. When he attempted to comply, he stumbled, steadied himself, and then said something like "what are you gonna do?" to Stamper. RP at 79. He was then hit with a taser and fell to the ground. The witnesses testified that Stamper was the one who fired the taser.
¶ 12 They further testified that when Goble started to get off the motorcycle to check on his grandson, they saw a person run out of the crowd and Goble put up his hand to try to stop that person. The next thing they knew, Goble was also on the ground. One of the witnesses described the person who ran out of the crowd as wearing green from head to toe, something like a jumpsuit, but she did not recognize him as a law enforcement officer at the time. Neither witness was aware that there was more than one officer present when the incident occurred and neither saw Goble put anyone in a headlock or struggle with Riordan.
¶ 13 One of the witnesses also testified that Goble's grandson had a bad reputation and that it would not have surprised her if someone from the crowd had tried to take advantage of the situation and attempt to harm him. She concluded that it was likely that Goble was just trying to protect his grandson.
¶ 14 The defense then called Dawn Tozer, the enforcement officer with Washington State Liquor Control Board who had talked to Stamper. Although Tozer testified that Goble's grandson got off the motorcycle aggressively and headed toward the officers before he was tased, she also testified that she did not observe a struggle between Goble and the officer and that she believed that the officers shot Goble with the taser because he refused to follow their orders to stay where he was. But she also admitted that during the incident she and her partner were busy dealing with a man who was trying to incite the crowd that had gathered at the scene.
¶ 15 Goble testified that his grandson "bailed off the bike" with his hands up, took two steps toward Stamper and said, "What are you gonna do, Jeremy Stamper?" RP at 109. At that point, he noticed someone "coming out of the side." RP at 109. Fearing that someone from the crowd was going to harm his grandson, he turned around and put his hands up and the man ran into him. The next thing he recalled was waking up on the ground. He denied fighting with or intending to assault Riordan. He also denied telling Stamper that he was trying to prevent Riordan from shooting his grandson with the taser.
¶ 16 After an off-the-record discussion of the jury instructions, the trial court presented its instructions.[1] The only discussion in the record concerning the jury instructions was as follows:
THE COURT: All right. Counsel, you do have my intended instructions. I recognize you may not have had much time to look at them, but do you have objections or exceptions, or do you want more time to look through them?
[DEFENSE COUNSEL]: I'm looking right now, Your Honor.
[PROSECUTOR]: I don't have any objections or exceptions, Your Honor.
[DEFENSE COUNSEL]: Is there a knowledge instruction there, Your Honor?
THE COURT: Yes, there is.
[DEFENSE COUNSEL]: Okay. I think we got them all then.
THE COURT: Knowledge and intent.
[DEFENSE COUNSEL]: Okay. Good. Thank you. No objections, Your Honor.
RP at 133.
¶ 17 During deliberations, the jury twice asked the court what it must do when it was deadlocked. The court responded to the first note by telling the jury to continue deliberating; it did not respond to the second inquiry. But approximately 12 minutes after its second inquiry, the jury sent another note asking for clarification of instruction 8, the knowledge instruction. The court responded: "You may use your common sense in interpreting these instructions." Clerk's Papers (CP) at 33.
¶ 18 The jury found Goble guilty of third degree assault.

*824 ANALYSIS

I. SUFFICIENCY
¶ 19 Goble first argues that the law of the case required the jury to find that (1) at the time of the alleged assault he knew Riordan was a law enforcement officer performing his official duties, and (2) the incident took place in Lewis County, and that the evidence was insufficient to establish these elements.
¶ 20 Instruction 4 provided in part:
To convict the defendant of the crime of Assault in the Third Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 13th day of August, 2004, the defendant assaulted Deputy D. Riordan;
(2) That at the time of the assault, Deputy D. Riordan, was a law enforcement officer who was performing his official duties; and
(3) That the defendant knew at the time of the assault that Deputy D. Riordan was a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties; and
(4) That the acts occurred in Lewis County, Washington.

CP at 40 (emphasis added).
¶ 21 Nothing in the record shows that the State objected to this instruction; thus, this instruction became the law of the case and the State was required to prove the elements stated in paragraphs (3) and (4) of the instruction.[2]State v. Hickman, 135 Wash.2d 97, 101-02, 954 P.2d 900 (1998). To determine whether there is sufficient evidence to prove the additional elements, we ask "`whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), overruled on other grounds by Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).
¶ 22 Taken in the light most favorable to the State, Stamper's testimony that Goble told him he had grabbed Riordan to prevent him from shooting his grandson with the taser, the fact that both officers were in uniform, and Stamper's actions that made it clear that law enforcement was involved in the situation, support the knowledge element. To the extent the defense presented contradictory evidence, credibility and weight determinations are for the trier of fact and are not subject to review. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990); State v. Walton, 64 Wash.App. 410, 415-16, 824 P.2d 533 (1992).
¶ 23 The evidence at trial also established that the offense occurred in Morton, that Goble was charged in Lewis County, and that Riordan was a Lewis County Sheriff Deputy. And, given that the case was heard in the Lewis County Superior Court, the jurors were also from Lewis County. The evidence was sufficient to allow a reasonable jury to find this element. Accordingly, this argument fails.

II. INSTRUCTIONAL ERROR
¶ 24 Goble next argues that instruction 8, the knowledge instruction, relieved the State of the burden of proving an element of the offense and that it was confusing, misleading, and a misstatement of the law. We agree.
¶ 25 Instruction 8 provided:
A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result described by law as being a crime, whether or not the *825 person is aware that the fact, circumstance or result is a crime.
If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.
Acting knowingly or with knowledge also is established if a person acts intentionally.
CP at 44 (emphasis added). This definitional instruction follows Washington Pattern Jury Instruction  Criminal (WPIC) 10.02.[3] The jury's third inquiry to the court during deliberation shows that it had difficulty understanding this instruction.
¶ 26 Goble argues that the italicized portion of the instruction relieved the State of the burden of proving his knowledge of Riordan's status at the time of the offense and that the entire instruction was confusing, misleading, and a misstatement of the law because it did not follow the exact wording of RCW 9A.08.010(1)(b).[4] The record does not show whether Goble objected to this instruction on any ground. But, given the conflicting testimony on the knowledge element, if he can show that this alleged error relieved the State of its burden of proving the knowledge element by allowing the jury to assume that an essential element need not be proven, then this error is of constitutional magnitude, which we will review despite his failure to object.[5]See State v. Stein, 144 Wash.2d 236, 241, 27 P.3d 184 (2001) (citing State v. Smith, 131 Wash.2d 258, 263, 930 P.2d 917 (1997)); State v. Deal, 128 Wash.2d 693, 699, 911 P.2d 996 (1996) (mandatory presumptions violate due process if they relieve the State of the burden of proving an element of the offense).
¶ 27 We agree that the instruction is confusing and that the italicized portion of the instruction allowed the jury to presume Goble knew Riordan's status at the time of the incident if it found Goble had intentionally assaulted Riordan. This conflated the intent and knowledge elements required under the to-convict instruction into a single element and relieved the State of its burden of proving that Goble knew Riordan's status if it found the assault was intentional. Further, given the conflicting evidence, we cannot say that this error was harmless[6] and reversal is required. Because we reverse on this ground, we do not address Goble's other arguments.[7]
¶ 28 We reverse the conviction and remand for further proceedings.
I concur: HOUGHTON, P.J.
HUNT J.
¶ 29 I respectfully dissent. I disagree with the majority's holding that Instruction No. 8 is confusing and that it relieved the State of *826 its burden of proving an element of the offense by conflating the knowledge and intent elements of the crime. I would uphold the trial court's giving this instruction because (1) Goble did not object to it, and (2) the record does not show that the instruction impermissibly relieved the State of its burden of proving knowledge beyond a reasonable doubt. I would affirm.
¶ 30 Instruction No. 8 provided:
A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.
If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.
Acting knowingly or with knowledge also is established if a person acts intentionally.
Supplemental Clerk's Papers (CP) at 44 (emphasis added).
¶ 31 In my view, the italicized portion of Instruction No. 8 did not direct the jury to presume knowledge of Riordan's law enforcement status from Goble's intentional grabbing of Riordan's throat. Although the last line of this instruction is not the epitome of clarity, it merely explains that doing some act "intentionally" subsumes doing that act "knowingly." Applied here, the reference to acting "intentionally" relates to Goble's grabbing of Riordan, not to Goble's knowledge of the Riordan's law enforcement status. I cannot agree with the majority's reasoning that this last line of Instruction No. 8 somehow required the jury automatically to find that Goble knew Riordan was an officer when it found that Goble had intentionally grabbed him.
¶ 32 Moreover, failure to include the exact wording of RCW 9A.08.010(1)(b)[8] in the knowledge instruction did not relieve the State of its burden to prove that Goble knew Riordan was a law enforcement officer.[9] "[F]ailure to give a definitional instruction is not failure to instruct on an essential element." State v. Scott, 110 Wash.2d 682, 690, 757 P.2d 492 (1988) (quoting State v. Tarango, 105 N.M. 592, 734 P.2d 1275, 1282 (Ct.App.), cert. denied, 105 N.M. 521, 734 P.2d 761 (1987), overruled on other grounds by Zurla v. State, 109 N.M. 640, 789 P.2d 588 (Ct.App.1990)).[10] Here, the "to-convict" assault instruction clearly explained that, in order to convict, the jury had to find beyond a reasonable doubt that Goble knew Riordan was a law enforcement officer. Instruction No. 8's lack of a verbatim recitation of the statutory definition of knowledge did not relieve the State of its burden to prove this element.
¶ 33 Finally, in my view, the second paragraph of Instruction No. 8 did not create an improper permissible inference that relieved the State of its burden to prove Goble knew that Riordan was a law enforcement officer. "When a permissive inference is only part of the State's proof supporting an element and not the `sole and sufficient' proof of such element, due process is not offended if the prosecution shows that the inference more likely than not flows from the proven fact." State v. Sandoval, 123 Wash.App. 1, 4-5, 94 P.3d 323 (2004) (quoting State v. Deal, 128 Wash.2d 693, 699-700, 911 P.2d 996 (1996) (citing State v. Brunson, 128 Wash.2d 98, 107, 905 P.2d 346 (1995))). (Emphasis added.)
¶ 34 Evidence that Goble knew of Riordan's law enforcement status was not limited *827 to an inference based on Riordan's wearing a uniform. Stamper testified that Goble told him he (Goble) had interfered with Riordan to keep Riordan from shooting his grandson with a Taser. Goble's knowledge that Riordan was wielding a Taser to subdue Goble's grandson gave rise to an inference that Goble knew Riordan was acting in his capacity as a police officer. Additionally, Riordan testified that he had several, previous, non-confrontational social contacts with Goble while Riordan was in uniform, such that Goble knew from these other contacts that Riordan was a police officer.[11]
¶ 35 The State had to show that the inference of Goble's knowledge of Riordan's law enforcement status "more likely than not flow[ed] from the proven fact." Sandoval, 123 Wash.App. at 4-5, 94 P.3d 323. In my view, the evidence properly supported this inference, and the challenged instruction did not relieve the State of its burden of proving knowledge.[12]
¶ 36 Again, I would affirm.
NOTES
[1] The proposed instructions are not part of the record on appeal.
[2] Although this instruction is based on Washington Pattern Jury Instruction  Criminal (WPIC) 35.23.02, the comment on the instruction notes that paragraph (3) presumes that knowledge of the victim's status is an element of the offense and that at the time the instruction was drafted it was not clear that this presumption was correct. WPIC 35.23.02 Comment (discussing State v. Tunney, 129 Wash.2d 336, 339, 917 P.2d 95 (1996), and State v. Allen, 67 Wash.App. 824, 828, 840 P.2d 905 (1992)). Subsequently, in State v. Brown, 140 Wash.2d 456, 998 P.2d 321 (2000), our Supreme Court held that knowledge of the victim's status was not an element of the offense. The WPIC did not require that the parties designate the County in paragraph (4).
[3] WPIC 10.02 states that the italicized portion of the instruction is to be included only when appropriate.
[4] RCW 9A.08.010(1)(b) provides:

A person knows or acts knowingly or with knowledge when:
(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.
[5] Although the record shows that Goble wanted to ensure that the trial court provided the jury with an instruction defining knowledge, the record does not show whether Goble actually proposed the language in instruction 8. Because it is the State's burden to establish invited error and mere failure to object to an instruction proposed by the other party does not establish invited error, see State v. Thomas, 150 Wash.2d 821, 844, 83 P.3d 970 (2004), we cannot conclude that the invited error doctrine applies here.
[6] A constitutional error is harmless if the reviewing court is convinced beyond a reasonable doubt that the same result would have been reached in the absence of the error. State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985) (citing State v. Stephens, 93 Wash.2d 186, 190-91, 607 P.2d 304 (1980)).
[7] Goble also argues that instructions 1 and 4 denied him his right to a jury trial by erroneously instructing the jury that it must convict him if it found every element of the crime, thereby misinforming the jury about its power to nullify the verdict. If we were to address this issue in this appeal it is unlikely we would reach the merits because Goble failed to object to these instructions and he fails to allege any prejudice. On remand, however, Goble will have the opportunity to raise and preserve this issue.
[8] RCW 9A.08.010(1)(b) provides:

A person knows or acts knowingly or with knowledge when:
(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.
[9] "The requirements of due process usually are met when the jury is informed of all the elements of an offense and instructed that unless each element is established beyond a reasonable doubt the defendant must be acquitted." State v. Scott, 110 Wash.2d 682, 690, 757 P.2d 492 (1988).
[10] See also Rohlfing v. State, 612 S.W.2d 598, 602-03 (Tex.Crim.App.1981).
[11] Although both sides presented conflicting testimony on this point, witness credibility is for the jury.
[12] I agree with the majority that we should not reach the merits of Goble's arguments about the jury's power to nullify the verdict because he failed to propose such an instruction, to object to the instructions given, or to allege any prejudice.