IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30341-1-III |
| Respondent, | ) | |
| v. | ) | |
| JOSHUA CHARLES DONLEY, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

SIDDOWAY, J. — Joshua Donley appeals his conviction of second degree assault.

He argues that there was insufficient evidence of the required element of intent in light of

undisputed evidence he was voluntarily quite intoxicated and his testimony that he has no

memory of the assault. As pointed out by the State, however, the victim, a witness, and

responding officers all testified to seemingly deliberative action on his part. The

evidence was sufficient to support the element of intent. For that reason and because Mr.

Donley raises no viable challenges in a statement of additional grounds, we affirm.

FACTS AND PROCEDURAL BACKGROUND

On an evening in late July 2009, Cynthia C. and a male friend with whom she was

then living stopped for drinks at the Uptown Bar in Richland. Ms. C. and her roommate

began speaking with Mr. Donley, another patron of the bar, who was friendly and bought

them the first round of drinks. Ms. C. and Mr. Donley drank and visited for several hours before deciding to travel to another bar, Lee's Tahitian, for more drinks. Ms. C. would later testify that by the time the two left the Uptown Bar she had "a good buzz" and she and Mr. Donley were both "pretty drunk." Report of Proceedings (RP) at 30-31. Ms. C.'s housemate later joined them at Lee's.

While at Lee's, Mr. Donley proposed that he and Ms. C. leave and go to his house; Ms. C. declined but countered with an invitation to her place. The three left the bar, with Ms. C.'s roommate driving home and Ms. C. and Mr. Donley planning to walk the 8 to 10 blocks to her house. Both had difficulty walking due to their inebriation and at one point, Ms. C. attempted to give Mr. Donley a piggyback ride. During the walk, Ms. C. asked Mr. Donley to carry her driver's license and food stamp card in his wallet because she had no pockets. Part way to the house, they were offered and accepted a ride.

Once at her home, Ms. C. told Mr. Donley that she was going to change from a dress into jeans. When he came looking for her in her bedroom, he found her topless, without her jeans on, sitting on the lap of her reclining roommate. She would later testify that Mr. Donley "got kind of perturbed and was confused probably as to what was going on." RP at 36. He left. She dressed and followed him outside and down the sidewalk to retrieve her driver's license and food stamp card.

Ms. C. caught up with Mr. Donley at the corner and asked for her cards. He fumbled for his wallet but was having trouble finding her cards, at which point she told

2

him, "'if you don't mind, I'll get it myself,'" and took her driver's license from his wallet. *Id.* at 39. Mr. Donley immediately yelled, "'Bitch, give me my shit.'" *Id.* Ms. C. held up her driver's license and said, "'That's not you. You're not a pretty blond girl, and your name's not Cindy.'" *Id.* At that point, Mr. Donley hit her. She fell and chipped her tooth on the asphalt.

Mr. Donley dropped on top of her, put her into a chokehold, and eventually got her into the front yard of a nearby home. Ms. C. assumed she lost consciousness at some point. She testified that he continued to choke her, repeatedly hit her, pulled her jeans down to mid-thigh and attempted to rape her.

As the assault was occurring, a stranger, Natalie McGuffin, drove by and saw them, initially assuming that they were just "horsing around." *Id.* at 97. When she saw in her rearview mirror that Mr. Donley was striking Ms. C., though, she made a U-turn, returned to where the two were and asked, "'[W]hat the hell are you doing?'" *Id.* Mr. Donley replied, "'Stay out of it or I will kill you.'" *Id.* Ms. McGuffin did not have a cell phone, so she drove to the nearby home of a friend and called police. When police arrived, Mr. Donley immediately rolled off of Ms. C. and asked, "'Where'd the Mexican go? Where'd the Mexican go?'" *Id.* at 43.

Mr. Donley was arrested and later charged with attempted rape in the first degree, attempted rape in the second degree, and second degree assault with sexual motivation.

3

At trial, Mr. Donley testified that he began drinking at the Uptown Bar at around 11 a.m. He consumed a six-pack of beer while watching boat races on television and then switched to hard liquor. He remembered meeting Ms. C.'s roommate first, being introduced to Ms. C. by her roommate, flirting with her, and moving on to the second bar. He testified that beginning with events at the second bar his recollection "[s]tarted getting hazy." RP at 135. He claimed to have no recollection of going to Ms. C.'s home or virtually any other event that followed that evening. Aside from remembering that Ms. C. at one point asked for "an ID or something out of [his] wallet," Mr. Donley testified that his memory was a "pretty good blank." *Id.* at 138-39.

The trial court instructed the jury that it could consider the possible relevance of Mr. Donley's voluntary intoxication to his ability to form the intent required for second degree assault. The jury nonetheless found him guilty of second degree assault, although without sexual motivation. It acquitted him of the attempted rape charges. Mr. Donley appeals.

## ANALYSIS

Due process requires the State to prove all elements of the crime beyond a reasonable doubt. *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006). A person commits the crime of assault in the second degree when he or she "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm." RCW 9A.36.021(1)(a). The jury was instructed that to convict Mr. Donley of the crime, one of

4

the elements the State was required to prove was "[t]hat on or about July 26, 2010, the defendant intentionally assaulted [Ms. C.]." Clerk's Papers (CP) at 232 (Instruction 21). It was instructed, "A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime." CP at 228 (Instruction 17); RCW 9A.08.010(1)(a).

RCW 9A.16.090,[1] provides:

> No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his or her condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his or her intoxication may be taken into consideration in determining such mental state.

The court's instructions to the jury included proposed instruction 18.10 from the *Washington Pattern Jury Instructions: Criminal*, which explained that the jury could consider voluntary intoxication in deciding the element of intent. CP at 229 (Instruction 18); 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.10 (3d ed. 2008) (WPIC).

"Intoxication is not a 'defense' to a crime." *State v. Coates*, 107 Wn.2d 882, 891, 735 P.2d 64 (1987). It may raise a reasonable doubt as to the mental state element of the offense. *Id.* Where the evidence raises an issue as to the effect of a defendant's

---

[1] We quote the current version of RCW 9A.16.090, which was amended by Laws of 2011, chapter 336, section 355 to make the language gender neutral.

intoxication on his ability to formulate the requisite mental state, the statute "describes the manner in which [that] type of evidence is to be employed, in much the same way as neutral instructions describe the use of inferences or circumstantial evidence." *Id.* at 890.

Voluntary intoxication is not a complete defense because one who consumes alcohol or drugs should realize the potential effects of his or her actions. *State v. Wicks*, 98 Wn.2d 620, 627, 657 P.2d 781 (1983) (Utter, J., dissenting). "The voluntary intoxication statute allows the trier of fact to consider the defendant's intoxication in assessing his mental state [but] does not require that consideration to lead to any particular result." *Coates*, 107 Wn.2d at 889-90.

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). A defendant challenging the sufficiency of the evidence in a criminal case admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). The intent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability. *State v. Cordero*, 170 Wn. App. 351, 369, 284 P.3d 773 (2012).

Mr. Donley challenges the sufficiency of the State's evidence on the element of intent where, he contends, the undisputed evidence was that he "was so intoxicated he

could not recall a thing and he snapped—a textbook example of an alcohol blackout." Br. of Appellant at 6-7.

The fact that Mr. Donley cannot recall the assault is not evidence that he did not intend to inflict great bodily harm. *See State v. Thomas*, 123 Wn. App. 771, 780-81, 98 P.3d 1258 (2004) (trial court properly excluded expert testimony that defendant had experienced an alcoholic blackout leaving her with no recollection of an assault because the blackout is not evidence that she could not form the intent to commit assault in the first degree). And the jury was free to disbelieve Mr. Donley's testimony that he had no recollection. The sufficiency of evidence therefore does not turn on his testimony (credible or not) but instead on whether the State's evidence of his actions supported a finding that he acted intentionally.

The State presented evidence that Mr. Donley engaged in maneuvers that it describes as requiring forethought, demonstrating a specific intent or goal, and being accompanied by statements explaining his purpose. During Mr. Donley's chokehold of Ms. C., she tapped his shoulder and arm because she could not breathe, to which he responded, "'You're not tapping out.' . . . '[Y]ou're going night night, bitch. You're going night night.'" RP at 41. After pulling down Ms. C.'s jeans and while attempting to penetrate her, he stated, "'Now you're getting fucked. Now you're fucked, bitch.'" *Id.* at 42. When Ms. McGuffin stopped her car and demanded to know what he was doing, Mr. Donley stated, "'Stay out of it or I will kill you.'" *Id.* at 97. Finally, when

7

police arrived, he stopped what he was doing and suggested that someone else was culpable, stating, "'Where'd the Mexican go?'" RP at 43.

Mr. Donley had the opportunity to present evidence of his intoxication to the jury. It was for the jury to take that evidence into consideration in determining his mental state. Its verdict reflects its conclusion that he did act intentionally, and the evidence is sufficient to support it.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Donley states two. His first is that the trial court "omit[ted] the knowledge element[,] misstat[ing] the law and reliev[ing] the state of its burden of proof on an element of the offense." SAG at 1. The second is that "[i]t was attorney misconduct for defendant's counsel to ask the state's main witness to not testify truthfully." SAG at 2.

In support of his assertion that the trial court "omit[ted] the knowledge element," Mr. Donley assumes that the trial court should have given the definition of "knowledge" or "knowingly" provided by WPIC 10.02, citing *State v. Goble*, 131 Wn. App. 194, 126 P.3d 821 (2005). *Goble* involved a defendant's third degree assault of a law enforcement officer while the officer was performing his official duties. *Id.* at 196; RCW 9A.36.031(1)(g). At issue on appeal was the fact that the trial court had mistakenly given an instruction that knowledge that the victim was a law enforcement officer was an element of the crime. *See Goble*, 131 Wn. App. at 201 n.2 (pointing out that *State v.*

8

*Brown*, 140 Wn.2d 456, 998 P.2d 321 (2000) established that knowledge of the victim's status was *not* an element). Because the instruction was given by mistake it was treated as law of the case.

The decision in *Goble*, like WPIC 10.02, has no application to the charges against Mr. Donley. Knowledge is not an element of second degree assault. *See* RCW 9A.36.021(1)(a). There was no need to define it. The court did not err.

In support of his assertion of attorney misconduct, Mr. Donley includes an unexplained citation to Ms. C.'s statement to the court during Mr. Donley's sentencing. Although Mr. Donley is not required to cite to the record in a SAG, he must inform the court of the "nature and occurrence of alleged errors." RAP 10.10(c). There is insufficient argument to address the second ground.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Brown, J.

9