

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75040-2-I |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| SEBASTIAN JOSEPH HALLER, | ) | UNPUBLISHED |
| Appellant. | ) | FILED: June 27, 2016 |

Cox, J. – Sebastian Haller appeals his judgment and sentence. He claims that insufficient evidence supports his witness tampering convictions. He also claims prosecutorial misconduct and that his counsel was ineffective. Finally, he claims several sentencing errors. In his Statement of Additional Grounds for Review, he argues denial of his right to a speedy trial, prosecutorial misconduct, ineffective assistance of counsel, and insufficient evidence. Because there was no reversible error in all but two of Haller's claims, we affirm his convictions. But we remand for resentencing for the trial court to address certain matters.

In 2014, a confidential informant worked with the Centralia Police Department to purchase controlled substances, including heroin, from Sebastian Haller. The confidential informant contacted Haller through his brother, Arthur Heilman-Haller, and made two separate purchases. Police later searched the residence where the transactions occurred and arrested Haller.

The State charged Haller for multiple offenses including two counts of delivery of controlled substances near a school bus stop, possession, and possession with intent to deliver. The State later charged Haller with three counts of witness tampering, arising from three phone calls he made from jail. The jury found him guilty as charged, and the trial court entered its judgment and sentence on the verdicts.

Haller appeals.

## SUFFICIENCY OF EVIDENCE

Haller argues that insufficient evidence supports the witness tampering convictions. We disagree.

Due process requires the State to prove beyond a reasonable doubt every element of a crime.[1] An insufficient evidence claim "admits the truth of the State's evidence and all reasonable inferences from that evidence."[2] The critical inquiry is "'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"[3] "[W]e view the 'evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'"[4]

---

[1] State v. Rodriquez, 187 Wn. App. 922, 930, 352 P.3d 200, review denied, 184 Wn.2d 1011 (2015).

[2] Id.

[3] Id. (quoting Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

[4] State v. Garcia, 179 Wn.2d 828, 836, 318 P.3d 266 (2014) (quoting State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)).

"Circumstantial evidence and direct evidence can be equally reliable."[5] We defer to the jury on questions regarding conflicting testimony, witness credibility, and the persuasiveness of evidence.[6]

### Witness Tampering

Haller argues that insufficient evidence supports the witness tampering convictions, claiming that he did not attempt to induce *false* testimony. The record proves otherwise.

In relevant part, RCW 9A.72.120(1)(a) provides:

> A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness . . . to . . . [t]estify falsely or, without right or privilege to do so, to withhold any testimony.

Additionally, "an attempt to induce a witness to withhold testimony does not depend only upon the literal meaning of the words used. The State is entitled to rely on the inferential meaning of the words and the context in which they were used."[7]

Here, there is sufficient evidence that Haller committed witness tampering. In December 2014, Haller called his grandmother three times to have her relay messages to Arthur regarding Arthur's testimony. The jury heard the recording of the three phone calls. During the first call, Haller stated "I want him to come over

---

[5] Rodriquez, 187 Wn. App. at 930.

[6] Id.

[7] State v. Rempel, 114 Wn.2d 77, 83-84, 785 P.2d 1134 (1990).

3

and testify that the drugs were his, and . . . we might be subpoenaing . . . him."[8]

Haller then stated "And then of course he wouldn't get in any trouble if he was to say, yeah, they weren't [Haller's]."[9]

During the second call, Haller's grandfather answered the phone, and Haller spoke with him about the above conversation. In relevant part, Haller stated:

> if he just says that . . . everything in the house was not mine, then I have a good chance of winning my case. . . . And of course they can't charge him again. . . . So if he just says that they weren't mine, then I should be good to go. . . . [A]sk Grandma to relay a message to Arthur.[10]

During the third call, Haller spoke with his grandmother again, stating:

> I want him to testify for me saying that [it] wasn't mine. . . . [H]e has to testify to say that it wasn't mine, and . . . [t]here is no way that he can get any more charges. . . . All he needs to do is say that the drugs were not mine, and then I will not get 12 years. . . . So you have to talk him into it. You have to tell him, you know, that he can't get in any trouble. He won't get in any trouble at all. . . . [I]f Arthur comes in and says no, that they weren't [Haller's], then . . . I'll win my case. They can't charge him.[11]

In these calls, Haller never directly states that he wants Arthur to lie, change his testimony, or withhold testimony. But the jury could have inferred beyond a reasonable doubt that Haller was attempting to instruct Arthur, through his grandmother, on how to testify.

---

[8] Trial Exhibit 39 (Transcription of Phone Call Recordings at 5-6).

[9] Id. at 6.

[10] Id. at 20.

[11] Id. at 26-27, 29.

At trial, Haller testified that he did not want Arthur to lie. He also stated that he was concerned that Arthur would be scared of getting into more trouble for telling the truth. Arthur also testified that neither Haller nor anyone Haller spoke with asked him to lie.

The jury was not required to accept this testimony as credible. Thus, viewing the evidence in the light most favorable to the State, a rational fact finder could have found that Haller attempted to induce Arthur to testify falsely.

*Witness Tampering Location*

Haller argues that insufficient evidence supports the witness tampering conviction, claiming that the State failed to prove that the crime occurred in Washington State. We disagree.

In State v. Goble, Kenneth Goble made a similar argument, claiming that insufficient evidence supported the location element for assaulting an officer.[12] The instruction required the jury to find that the crime occurred in Lewis County, Washington.[13] Division Two of this court concluded there was sufficient evidence, stating "[t]he evidence at trial . . . established that the offense occurred in Morton [Washington], that Goble was charged in Lewis County, and that [the officer] was a Lewis County Sheriff Deputy. And, given that the case was heard in the Lewis County Superior Court, [and that] the jurors were also from Lewis

---

[12] 131 Wn. App. 194, 200, 126 P.3d 821 (2005).

[13] Id.

5

County[,] [t]he evidence was sufficient to allow a reasonable jury to find this element."[14]

Similarly, there is sufficient evidence that Haller committed witness tampering in Washington State. First, the jury heard the phone call recordings stating that an inmate was calling from the Lewis County Jail. Second, Haller testified that he wanted Arthur to "come back over to Lewis County" to testify. Third, Haller was charged and incarcerated in Lewis County Washington and the trial occurred there.

Thus, according to Goble and viewing the evidence in the light most favorable to the State, a rational fact finder could have found that Haller committed the crime in Washington.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Haller argues that his counsel provided ineffective assistance by failing to make certain arguments and objections. We disagree.

Both the federal and state constitutions provide the right to counsel.[15] The right to counsel includes the right to effective assistance of counsel.[16]

To establish an ineffective assistance claim, the defendant must first show that counsel's performance was deficient.[17] This requirement involves showing

---

[14] Id. at 201-02.

[15] U.S. CONST. amend. VI; CONST. art. I, § 22.

[16] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Crawford, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006).

[17] Strickland, 466 U.S. at 687.

that counsel's performance "fell below an objective standard of reasonableness."[18] Judicial scrutiny of counsel's performance is "highly deferential."[19]

We make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[20] "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[21] "[A] defendant rebuts this presumption when no conceivable legitimate tactic exists to explain counsel's performance."[22]

Second, the defendant must show that the deficient performance prejudiced the defense.[23] Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[18] Id. at 688.

[19] Id. at 689.

[20] Id.

[21] Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)).

[22] State v. Maynard, 183 Wn.2d 253, 260, 351 P.3d 159 (2015).

[23] Strickland, 466 U.S. at 687.

7

been different."[24] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[25]

We review de novo whether a defendant received ineffective assistance of counsel.[26]

Here, Haller argues that his counsel was ineffective for three reasons. First, he claims counsel was ineffective by eliciting testimony about Haller's incarceration. Second, he claims counsel was ineffective by failing to object to the testimony about Haller's incarceration. Lastly, he claims counsel was ineffective by failing to argue "same criminal conduct" for the possession and witness tampering charges. We conclude that Haller fails to show that his counsel's performance "fell below an objective standard of reasonableness."[27]

As to Haller's first and second claims, counsel cross-examined the confidential informant, asking about her relationship with Haller and whether she spoke with him before a certain date. The informant testified:

> I've met him a few times. He's not my brother-in-law. He's not my kid's uncle. He's nothing to me. I don't really know [him]. He's always been in prison for this. . . . I don't really think I've sat and had a conversation with [him]. Like I said, he's been in prison . . . .[28]

---

[24] Id. at 694.

[25] Id.

[26] Maynard, 183 Wn.2d at 259.

[27] Strickland, 466 U.S. at 688.

[28] Report of Proceedings Vol. 1 (February 23, 2015) at 88.

Additionally, during counsel's cross-examination of Arthur, counsel asked about an interaction with Haller, where Arthur responded "[w]e had a nice talk over things that I had done when he was in prison. . . . I had stole [sic] some of his things."[29] Counsel then asked Arthur if Haller had been upset with him for stealing "things while [Haller] was incarcerated."[30]

This testimony demonstrates that counsel's questions were not designed to elicit testimony about Haller's incarceration. Rather, the witnesses volunteered that information in their responses. And although counsel mentioned Haller's incarceration when questioning Arthur, there is no dispute that Haller was incarcerated, as evident from the phone call recording played for the jury. Thus, an objection to the responses was not required.

Accordingly, Haller fails to show how his counsel's conduct during the witnesses' testimony "fell below an objective standard of reasonableness."[31] We reject his first claim.

Haller relies on State v. Saunders for his argument, where Division Two of this court determined that Lee Saunders established his ineffective assistance claim.[32] But that case is distinguishable because counsel asked Saunders whether he had prior **convictions** for similar possession offenses.[33] And

---

[29] Id. at 120.

[30] Id.

[31] Strickland, 466 U.S. at 688.

[32] 91 Wn. App. 575, 577, 958 P.2d 364 (1998).

[33] Id. at 578.

Division Two of this court included ER 609 in its analysis, the impeachment rule regarding convictions, when determining whether counsel's performance was deficient.[34]

The testimony at issue in this case mentioned Haller's incarceration, not convictions. We reject this claim as well.

As to Haller's third claim, he argues that his multiple possession charges are the same criminal conduct, constituting one crime for sentencing purposes. He also makes this argument regarding his multiple witnesses tampering charges. Thus, he claims his counsel was ineffective in failing to argue "same criminal conduct," resulting in prejudice.

But as explained earlier, the three witness tampering charges are separate offenses and are not one crime. Thus, Haller fails to show deficient performance. And as to the trial court's treatment of the three possession charges as one crime, we are remanding this issue for clarification. Thus, Haller fails to show prejudice.

Haller also claims that his counsel was ineffective in failing to object to the confidential informant's testimony that Arthur was afraid of Haller. Because he fails to support this claim with argument, we need not address it.[35]

---

[34] Id. at 579.

[35] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

## PROSECUTORIAL MISCONDUCT

Haller argues that the prosecutor committed misconduct, claiming that the prosecutor argued facts not in evidence. We disagree.

We "review alleged prosecutorial misconduct in 'the context of the total argument, the issues in the case, the evidence [addressed in the argument], and the instructions given to the jury.'"[36] "'[M]isconduct is to be judged not so much by what was said or done as by the effect which is likely to flow therefrom.'"[37]

It is improper for prosecutors to argue facts not in evidence.[38] But in closing argument, the prosecutor "has wide latitude to argue reasonable inferences from the evidence."[39] "The fact that evidence not admitted contradicts that inference is not relevant to the question here."[40]

A defendant waives the misconduct issue by failing to object or request a curative instruction at trial, "unless the conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[41] This heightened standard requires that a defendant "show that (1) 'no curative

---

[36] State v. Robinson, 189 Wn. App. 877, 893, 359 P.3d 874 (2015) (alteration in original) (quoting State v. Emery, 174 Wn.2d 741, 764 n.14, 278 P.3d 653 (2012)).

[37] Emery, 174 Wn.2d at 762 (quoting State v. Navone, 186 Wash. 532, 538, 58 P.2d 1208 (1936)).

[38] State v. Turner, 167 Wn. App. 871, 882, 275 P.3d 356 (2012).

[39] State v. Thorgerson, 172 Wn.2d 438, 448, 258 P.3d 43 (2011).

[40] State v. Allen, 161 Wn. App. 727, 748, 255 P.3d 784 (2011), aff'd, 176 Wn.2d 611, 294 P.3d 679 (2013).

[41] State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014).

instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[42] Additionally, when the defendant fails to object, it "'strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial.'"[43]

Here, during closing argument, the prosecutor stated, "these phone calls were made in the state of Washington."[44] Haller did not object.

The prosecutor's argument was not improper because it was a reasonable inference from the evidence. As previously discussed, there is sufficient evidence that Haller committed witness tampering in Washington State. The jury heard the phone call recordings stating that an inmate was calling from the Lewis County Jail. Haller also testified that he wanted Arthur to "come back over to Lewis County" to testify. Further, Haller was charged and incarcerated in Lewis County, Washington, and the trial occurred there. Thus, the prosecutor's argument was a reasonable inference from the evidence and not improper.

In sum, Haller was not prejudiced by the prosecutor's argument.

Haller also relies on a different statement the prosecutor made during rebuttal closing regarding witness tampering, claiming that the prosecutor's conduct was flagrant and ill intentioned.

---

[42] Emery, 174 Wn.2d at 761 (quoting Thorgerson, 172 Wn.2d at 455).

[43] State v. McKenzie, 157 Wn.2d 44, 53 n.2, 134 P.3d 221 (2006) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

[44] Report of Proceedings Vol. 3 (February 25, 2015) at 329.

In rebuttal closing, the prosecutor stated:

[T]his particular aspect caused me problems because of the final element that this occurred in the state of Washington. There was a stipulation that indicated where this crime occurred.[45]

After that statement, counsel objected, and the court sustained the objection. Haller did not request a curative instruction.

Haller claims that the prosecutor provided the missing element to the jury, and that the jury would not have found that the State satisfied its burden if the prosecutor did not make that statement. But Haller fails to argue how the statement was flagrant and ill intentioned.

And "[a]n objection which does not specify the particular ground upon which it is based is insufficient to preserve the question for appellate review."[46] Counsel failed to specify the basis for his objection, and Haller does not argue that the basis was apparent from the context. Thus, the objection is insufficient to preserve the question for appellate review. We do not address this any further.

Lastly, in Haller's assignments of error, he claims that the prosecutor committed misconduct by commenting on his right to remain silent, thus inferring guilt by silence. But he fails to mention this claim again. Thus, Haller abandoned this claim.[47]

---

[45] Id. at 368.

[46] State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

[47] Prostov v. Dep't of Licensing, 186 Wn. App. 795, 823, 349 P.3d 874 (2015).

## SENTENCING

### *Enhancements*

Haller argues that the trial court erred by imposing sentencing enhancements that run consecutively to each other. We agree.

When interpreting statutes, we determine the legislative intent from the statute's plain language and its context in the statutory scheme.[48] We review de novo questions of statutory interpretation.[49]

The sentencing enhancement statute at issue, RCW 9.94A.533(6), provides:

> An additional twenty-four months shall be added to the standard sentence range . . . . All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter.

This statute requires that trial courts run certain enhancements consecutively to the base sentence and not run the enhancements consecutively to each other.[50]

Here, the trial court ran three sentencing enhancements consecutively to each other in Haller's sentence. The State properly concedes this error. Thus, we reverse the trial court's sentence and remand for resentencing to correct this error.

---

[48] State v. Conover, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015).

[49] Id.

[50] Id. at 719.

*Double Jeopardy*

Haller argues that the trial court's sentencing violated his right to be free from double jeopardy. We disagree.

The double jeopardy clause of the Fifth Amendment and article I, section 9 of the Washington Constitution protect defendants against multiple punishments for the same offense.[51] "[W]hen a defendant is convicted of multiple violations of the same statute, the double jeopardy question focuses on what 'unit of prosecution' the Legislature intends as the punishable act under the statute."[52]

We review de novo whether a criminal defendant is placed in double jeopardy.[53]

*Witness Tampering*

Haller argues that the trial court's sentencing violated his right to be free from double jeopardy, claiming there was only one unit of prosecution for witness tampering, not three. We disagree.

In State v. Hall, the supreme court held what constituted a unit of prosecution for witness tampering case under a former statute.[54] There, Isiah Hall attempted to a call a witness from jail over 1,200 times to persuade her to

---

[51] State v. Fuller, 185 Wn.2d 30, 33, 367 P.3d 1057 (2016).

[52] State v. Westling, 145 Wn.2d 607, 610, 40 P.3d 669 (2002) (quoting In re Pers. Restraint of Davis, 142 Wn.2d 165, 172, 12 P.3d 603 (2000)).

[53] Fuller, 185 Wn.2d at 34.

[54] 168 Wn.2d 726, 731-38, 230 P.3d 1048 (2010).

not testify or to testify falsely.[55] The supreme court concluded that Hall committed one crime of witness tampering, stating "the unit of prosecution is the ongoing attempt to persuade a witness not to testify in a proceeding."[56]

In 2011, the legislature amended the witness tampering statute in response to Hall to provide that "each instance of an attempt to tamper with a witness constitutes a separate offense."[57] The legislature specifically stated that "it intend[ed] to clarify that each instance of an attempt to . . . tamper with a witness constitutes a separate violation for purposes of determining the unit of prosecution" under the witness tampering statute.[58]

Here, the State charged Haller with three counts of witness tampering, arising from the three phone calls he made to his grandparents from jail. According to the statute in effect at the time of Haller's actions, each phone call Haller made constitutes a separate offense. Thus, Haller was not placed in double jeopardy, and his three witness tampering convictions stand.

*Possession*

Haller next argues that the trial court violated his right to be free from double jeopardy, claiming there was only one unit of prosecution for possession, not three. This is not a double jeopardy issue, but one of same criminal conduct.

---

[55] Id. at 729.

[56] Id. at 734.

[57] RCW 9A.72.120(3).

[58] H.B. 1182, 62nd Leg., Reg. Sess. (Wash. 2011).

Under RCW 9.94A.589(1)(a), if a trial court enters a finding that some of the current offenses encompass the same criminal conduct, then those current offenses shall be counted as one crime. In State v. Vike, the supreme court held that "concurrent counts involving simultaneous simple possession of more than one controlled substance encompass[es] the same criminal conduct for sentencing purposes."[59]

A finding of "same criminal conduct" "favors the defendant by lowering the offender score below the presumed score."[60] If the trial court miscalculates the offender score, remand is necessary unless the record clearly shows that the trial court would have imposed the same sentence.[61]

Here, the State concedes error in the judgment and sentence, stating that the possession charges should have been denoted as encompassing the same criminal conduct. But the State argues that this error did not impact the court's determination of Haller's offender score or his sentence because the trial court properly treated the possession charges as one crime.

Conversely, Haller argues that this error was not harmless because it is uncertain whether the trial court would have imposed the same high end sentence. He specifically claims that his offender score would be reduced if the trial court did not treat his possession charges as one crime.

---

[59] 125 Wn.2d 407, 412-13, 885 P.2d 824 (1994).

[60] State v. Graciano, 176 Wn.2d 531, 539, 295 P.3d 219 (2013) (emphasis omitted).

[61] State v. Tili, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003).

17

We remand on this issue. The trial court should explicitly indicate in the judgment and sentence whether the possession charges were treated as one crime. If they were not treated as one crime, and if this error affected the calculation of Haller's offender score or sentence, the trial court should resentence Haller accordingly.

*Legal Financial Obligations*

Haller argues that the trial court improperly imposed legal financial obligations without determining Haller's ability to pay. We agree.

RCW 10.01.160(3) provides:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

The supreme court has stated that "the record must reflect that the superior court conducted an individualized inquiry into the defendant's present and *future* ability to pay such obligations."[62] This inquiry includes consideration of "incarceration and a defendant's other debts, including restitution."[63] Boilerplate language within a judgment and sentence stating that the court engaged in the required inquiry is not sufficient.[64]

---

[62] State v. Marks, 185 Wn.2d 143, 145, 368 P.3d 485 (2016) (per curiam) (emphasis added).

[63] State v. Blazina, 182 Wn.2d 827, 839, 344 P.3d 680 (2015).

[64] See id. at 838.

18

But a defendant's ability to pay should not be taken into account when trial courts impose mandatory obligations, such as victim restitution, victim assessments, DNA fees, and criminal filing fees.[65]

While we may decline to review this issue if raised for the first time on appeal, RAP 2.5(a) grants appellate courts discretion to accept review of claimed errors not appealed as a matter of right.[66]

Here, Haller raises this issue for the first time on appeal. But we accept review of this issue and remand it to the trial court for a determination of Haller's ability to pay.

During sentencing, the trial court imposed mandatory and non-mandatory financial obligations. The court attempted to order a payment plan of $25 per month, stating that Haller will have the opportunity to work while incarcerated. The court explained to Haller how he could get credit for work done, but Haller did not want the credit. The court then ordered that Haller pay $25 per month upon his release.

But the record does not show that the trial court conducted an inquiry into whether Haller had the ability to pay the $2,400 non-mandatory obligation after his release. The record shows that the trial court did not inquire into Haller's income and debts. The financial obligation provision in the judgment and sentence that contains boilerplate language is an insufficient inquiry. Despite this

---

[65] State v. Lundy, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

[66] Blazina, 182 Wn.2d at 834-35.

lack of inquiry, the trial court executed an Order of Indigency authorizing Haller to seek review at public expense.

Because the trial court did not inquire into Haller's future ability to pay the legal financial obligations, we reverse the imposition of the obligations and remand for a determination of Haller's ability to pay.

## APPELLATE COSTS

Haller also argues that we should exercise our discretion and deny the State appellate costs if the State substantially prevails. He specifically argues that he has no ability to pay these costs, stating it is unlikely that he will obtain gainful employment upon his release due to his criminal history.

As previously stated, the trial court entered an Order of Indigency authorizing Haller to seek review at public expense. Because there is no showing that Haller's financial condition has improved or is likely to improve, we presume that Haller remains indigent. An award to the State for appellate costs would be inappropriate under these circumstances.

## STATEMENT OF ADDITIONAL GROUNDS

Pursuant to RAP 10.10, Haller raises four additional grounds for review, arguing denial of his right to a speedy trial, prosecutorial misconduct, ineffective assistance of counsel, and insufficient evidence.

### Speedy Trial

Under CrR 3.3(d)(3), a party must object to a trial date set outside the speedy trial time limit within 10 days after receiving notice of the trial date.

Here, the trial court dealt with the speedy trial issue when Haller moved to dismiss this case. There, the parties discussed the timeline of events, and the trial court denied the motion. Neither party disputed that Haller's counsel failed to object to the trial date in accordance with CrR 3.3(d)(3). Thus, because Haller failed to object within 10 days of notice of his trial date, he lost his right to object to the trial date.

### Prosecutorial Misconduct

As to Haller's prosecutorial misconduct claim, he argues that the prosecutor argued facts not in evidence. He specifically relies on the prosecutor's statement during rebuttal closing argument stating:

> I want to talk about credibility of witnesses. You have an instruction on bias. You are to look at things like who has the most to gain, who has the most to lose and just overall reasonableness of testimony. In this particular case, the defendant is the only one with something to lose and something to gain. No testimony has shown that the officers gain anything or lose anything from this.[67]

Counsel objected but did not state the basis for the objection. The trial court allowed the prosecutor to continue.

As previously stated, "[a]n objection which does not specify the particular ground upon which it is based is insufficient to preserve the question for appellate review."[68]

Here, counsel failed to specify the basis for his objection, and Haller does not argue that the basis was apparent from the context. Thus, the objection is

---

[67] Report of Proceedings Vol. 3 (February 25, 2015) at 369.

[68] Guloy, 104 Wn.2d at 422.

insufficient to preserve the question for appellate review. We do not address this any further.

*Ineffective Assistance of Counsel*

Haller raises four ineffective assistance of counsel claims. First, he claims that counsel failed to object to the trial date. Second, he claims that counsel failed to submit a transport order for Arthur's jail transfer to secure him as a witness. Third, he claims that counsel failed to obtain a suppression hearing. Lastly, he claims that counsel failed to object to the confidential informant's testimony about Haller's incarceration. This last claim has already been addressed earlier.

This record is inadequate to review the other three claims, and we decline to review them. "Because these allegations rest on matters that are outside the record, they cannot be considered on direct appeal."[69] "The appropriate means of raising matters outside our record is through the filing of a personal restraint petition."[70]

*Sufficiency of Evidence*

Lastly, Haller argues that insufficient evidence supports his delivery and possession with intent convictions. But the record contains sufficient evidence for these crimes.

---

[69] State v. Kinzle, 181 Wn. App. 774, 786, 326 P.3d 870, review denied, 181 Wn.2d 1019 (2014).

[70] State v. Hart, 188 Wn. App. 453, 466, 353 P.3d 253 (2015).

As to the first delivery charge, Arthur testified that Haller weighed the heroin and that it was on a nightstand. He then stated that the confidential informant picked up the heroin and placed money on the nightstand. Arthur testified that Haller picked up the money. The confidential informant also testified to the transaction.

As to the second delivery charge, Arthur testified to receiving heroin from Haller before Haller went out of town. Arthur testified that Haller wanted him to sell the heroin and expected money upon his return. The confidential informant testified to this transaction as well.

And as to the possession with intent to deliver charge, officers testified to their search and seizure of evidence. And a witness from the state crime laboratory testified to his testing of the evidence.

Thus, sufficient evidence supports Haller's delivery and possession with intent convictions.

We affirm the Haller's convictions. But we remand for resentencing for the trial court to address the sentence enhancements, legal financial obligations, and possession issues.

Cox, J.

WE CONCUR:

Dwyer, J.

Becker, J.