166 P.3d 1268 (2007)
STATE of Washington, Respondent,
v.
Mark Thomas KEEND, Appellant.
No. 35222-2-II.
Court of Appeals of Washington, Division 2.
September 18, 2007.
*1270 Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.
Jill Landes, Port Townsend, WA, for Respondent.
BRIDGEWATER, P.J.
¶ 1 Mark Thomas Keend appeals his jury conviction for second degree assault under RCW 9A.36.021(1)(a). We hold that when the State charges a person with second degree assault for intentionally assaulting and recklessly inflicting substantial bodily harm, it is not misleading, nor does it create a mandatory presumption, for the trial court to instruct, as defined by RCW 9A.08.010(2), that "[r]ecklessness also is established if a person acts intentionally or knowingly." CP at 33, Instruction no. 9. In addition, because the evidence was insufficient to support an inference that Keend did not recklessly inflict substantial bodily harm, we hold that a lesser-included instruction would have been inappropriate. Also, we hold that the State is not required to allege or prove as an element of second degree assault that the act did not amount to first degree assault. Finally, we adhere to our decision in State v. Chavez, 134 Wash.App. 657, 142 P.3d 1110 (2006), review granted, 160 Wash.2d 1021, 163 P.3d 795 (2007), in which we held that *1271 the judiciary has not violated the separation of powers doctrine by defining common law assault. We affirm.

FACTS
¶ 2 Outside a bar in Port Angeles, Keend approached Daniel Reeves, asked him some questions about an alleged relationship with Keend's sister, and then punched him in the jaw. Keend broke Reeves's jaw, requiring doctors at Harborview Medical Center to wire his jaw closed for over two weeks. Then, after ultimately having his jaw realigned, Reeves wore braces on his teeth for another three weeks. During this treatment, Reeves missed at least two and a half months of work.
¶ 3 Keend admitted to Officer Edwin Benedict that he had punched Reeves in the jaw. According to Officer Benedict, Keend was mad that Reeves was allegedly involved in a sexual relationship with his then 16 year-old sister.[1] The State charged Keend with second degree assault under RCW 9A.36.021(1)(a), which provides that a person is guilty of second degree assault if he, under circumstances not amounting to first degree assault, intentionally assaults another and thereby recklessly inflicts substantial bodily harm. A jury convicted Keend. Keend appeals.

ANALYSIS

I. Recklessness Instruction
¶ 4 Among other things, Keend argues that the "recklessness" instruction in his case created a mandatory presumption, misled the jury regarding an essential element, and misstated the law. Br. of Appellant at 5. Here, the "recklessness" instruction, taken from 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 10.03, at 153 (2d ed. 1994) (WPIC), stated:
A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and the disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.[[2]]
Recklessness also is established if a person acts intentionally or knowingly.
CP at 33 (emphasis added). The first sentence of this instruction is taken from RCW 9A.08.010(1)(c); the second sentence of this instruction is taken from RCW 9A.08.010(2).
¶ 5 Although Keend assigns error, cites authority, and makes argument, it appears that he is raising this issue for the first time on appeal. "Generally, when there is no objection on the record, we will not consider an alleged instructional error unless the appellant first demonstrates that the error is a `manifest error affecting a constitutional right.'" State v. Gerdts, 136 Wash.App. 720, 726, 150 P.3d 627 (2007) (quoting RAP 2.5(a)(3)). But because Keend argues that his counsel was ineffective for failing to object to this instruction on the above grounds, we will nevertheless address his argument. Gerdts, 136 Wash.App. at 726, 150 P.3d 627.
¶ 6 To establish ineffective assistance of counsel, Keend must show that: (1) his counsel's performance was deficient; and (2) the deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995). Keend must overcome a strong presumption that his counsel's representation was adequate and effective. McFarland, 127 Wash.2d at 335, 899 P.2d 1251. And to show prejudice, he must establish "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." McFarland, 127 *1272 Wash.2d at 335, 899 P.2d 1251. In this context, to establish deficient performance or prejudice, Keend first must show that if his counsel had objected to the knowledge instruction on these grounds, the objection likely would have been successful. See Gerdts, 136 Wash.App. at 727, 150 P.3d 627.
¶ 7 "Jury instructions are `sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'" State v. Douglas, 128 Wash.App. 555, 562, 116 P.3d 1012 (2005) (quoting Bodin v. City of Stanwood, 130 Wash.2d 726, 732, 927 P.2d 240 (1996)). We review challenged jury instructions de novo, examining the effect of a particular phrase in an instruction by considering the instructions as a whole and reading the challenged portions in the context of all the instructions given. State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995), cert. denied, 518 U.S. 1026, 116 S.Ct. 2568, 135 L.Ed.2d 1084 (1996).
¶ 8 In a criminal case, the trial court must instruct the jury that the State has the burden to prove each essential element of the crime beyond a reasonable doubt. Pirtle, 127 Wash.2d at 656, 904 P.2d 245. It is reversible error if the instructions relieve the State of that burden. Pirtle, 127 Wash.2d at 656, 904 P.2d 245.
¶ 9 Relying on our decision in State v. Goble, 131 Wash.App. 194, 126 P.3d 821 (2005), Keend argues that the last sentence of the "recklessness" instruction created a mandatory presumption and allowed the jury to convict him if it found that he had acted intentionally.[3] Keend argues, for example, that this instruction allowed the jury to presume that he recklessly inflicted substantial bodily harm on the victim if the jury found that he intentionally assaulted the victim. His argument is without merit.
¶ 10 In Goble, we analyzed a "knowledge" instruction that included the sentence, "[a]cting knowingly or with knowledge also is established if a person acts intentionally." Goble, 131 Wash.App. at 202, 126 P.3d 821. In that case, we held that the instruction was confusing because it potentially allowed the jury to find the defendant guilty of third degree assault against a law enforcement officer if it found that the defendant intentionally assaulted the victim, but without having to find that the defendant knew the victim was a law enforcement officer performing his official duties. Goble, 131 Wash. App. at 202-03, 126 P.3d 821. We stated:
We agree that the instruction is confusing and that the [challenged] portion of the instruction allowed the jury to presume Goble knew [the victim's] status at the time of the incident if it found Goble had intentionally assaulted [the victim]. This conflated the intent and knowledge elements required under the to-convict instruction into a single element and relieved the State of its burden of proving that Goble knew [the victim's] status if it found the assault was intentional.
Goble, 131 Wash.App. at 203, 126 P.3d 821 (emphasis added).[4]
¶ 11 Here, under RCW 9A.36.021(1)(a), a person commits second degree assault if he "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm." This crime is defined by an act (assault) and a result (substantial bodily harm). See, e.g., State v. Tunney, 129 Wash.2d 336, 341, 917 P.2d 95 (1996). And *1273 the mens rea of intentionally relates to the act (assault), while the mens rea of recklessly relates to the result (substantial bodily harm).
¶ 12 Although assault requires the mens rea of intent, assault by battery does not require specific intent to accomplish some further result, such as inflicting substantial bodily harm. State v. Daniels, 87 Wash.App. 149, 155, 940 P.2d 690 (1997), review denied, 133 Wash.2d 1031, 950 P.2d 476 (1998); State v. Esters, 84 Wash.App. 180, 183-84, 927 P.2d 1140 (1996), review denied, 131 Wash.2d 1024, 937 P.2d 1101 (1997). We have defined common-law assault by battery as "an unlawful touching with criminal intent." State v. Russell, 69 Wash.App. 237, 246, 848 P.2d 743, review denied, 122 Wash.2d 1003, 859 P.2d 603 (1993). In other words, assault by battery simply requires intent to do the physical act constituting assault. State v. Hall, 104 Wash.App. 56, 62, 14 P.3d 884 (2000), review denied, 143 Wash.2d 1023, 25 P.3d 1020 (2001). Thus, under RCW 9A.36.021(1)(a), a defendant could intend to assault another without thereby intending to inflict substantial bodily harm.[5]
¶ 13 The "to convict" instruction in this case sets forth the elements of the crime separately, as follows:
(1) That on or about the 31 st day of March, 2006, the Defendant intentionally assaulted Daniel Reeves;
(2) That the Defendant thereby recklessly inflicted substantial bodily harm on Daniel Reeves; and
(3) That the acts occurred in the State of Washington.
CP at 30 (emphasis added). And the trial court separately defined "intentionally" in instruction number 10 and separately defined "recklessly" in instruction number. 9. CP at 33-34.[6]
¶ 14 Thus, under both the statute and the trial court's instructions, the jury could convict Keend if he intentionally assaulted the victim and one of three results occurred from that unwanted touching: (1) Keend intended to break the victim's jaw, (2) Keend knew that the victim was particularly vulnerable to a broken jaw if punched in the face; or (3) Keend knew and disregarded the risk of breaking the victim's jaw. Without including all the substitutes for the definition of "recklessly," the trial court would not have provided for the instance where Keend specifically intended the result of his intentional assault, i.e., breaking the victim's jaw. Therefore, it was appropriate for the trial court to instruct the jury that a reckless act is established if a person acts intentionally.
¶ 15 Furthermore, the jury is presumed to read the trial court's instructions as a whole, in light of all other instructions. State v. Hutchinson, 135 Wash.2d 863, 885, 959 P.2d 1061 (1998), cert. denied, 525 U.S. 1157, 119 S.Ct. 1065, 143 L.Ed.2d 69 (1999). Here, the trial court set forth the mental states of the crime separately in the "to convict" instruction and separately defined "intentionally" and "recklessly." And although Keend relies on Goble, it is inapposite to this case. In Goble, we were concerned with a dispute involving the "knowledge" instruction and the defendant's knowledge of the victim's status, i.e., whether the victim was a law enforcement officer. Goble, 131 Wash.App. at 202-03, 126 P.3d 821. And we held that the jury could have been confused by the "knowledge" instruction. Goble, 131 Wash.App. at 203, 126 P.3d 821. After all, if the jury found that the unwanted touching was intentional, the jury could have presumed that the defendant knew that the victim was a law enforcement officer. Goble, 131 Wash.App. at 203, 126 P.3d 821.
¶ 16 But in this case, there was no possibility that the jury was confused. There was *1274 no conflation of the mental states. As a whole, the jury instructions, including the "to convict" instruction and the definition instructions, were clear, accurate, and separately listed. And we presume that juries follow all instructions that the trial court gives to them. State v. Stein, 144 Wash.2d 236, 247, 27 P.3d 184 (2001). There is no possibility that, because the jury found that Keend intended to punch the victim, it necessarily found that Keend intended to break the victim's jaw. In other words, the second sentence of the "recklessness" instruction did not allow the jury to presume that Keend intended to inflict substantial bodily harm if it found that he intentionally assaulted Reeves. Thus, we find no error.

II. Lesser-included Offense
¶ 17 Keend argues that he was denied effective assistance of counsel when his counsel failed to request an instruction on the lesser-included offense of fourth degree assault.[7] He claims that the evidence supports an inference that he did not recklessly inflict substantial bodily harm. We disagree.
¶ 18 "A lesser[-]included offense instruction is proper only if each element of the lesser offense is necessarily included in the charged offense and `there is sufficient evidence to support an inference that the lesser crime was committed.'" State v. Charles, 126 Wash.2d 353, 355, 894 P.2d 558 (1995) (quoting State v. Speece, 115 Wash.2d 360, 362, 798 P.2d 294 (1990)). Also, it is not enough that the jury might simply disbelieve the State's evidence. Charles, 126 Wash.2d at 355, 894 P.2d 558. Thus, we apply both a legal analysis and a factual analysis. And we apply the lesser-included offense analysis to the offenses as charged and prosecuted, rather than to the offenses as they broadly appear in the statute. State v. Berlin, 133 Wash.2d 541, 548, 947 P.2d 700 (1997).
¶ 19 Reckless conduct includes a subjective and objective component. State v. R.H.S., 94 Wash.App. 844, 847, 974 P.2d 1253 (1999). "Whether an act is reckless depends on both what the defendant knew and how a reasonable person would have acted knowing these facts." R.H.S., 94 Wash.App. at 847, 974 P.2d 1253. Moreover, the jury is permitted to find actual subjective knowledge if there is sufficient information that would lead a reasonable person to believe that a fact exists. R.H.S., 94 Wash.App. at 847, 974 P.2d 1253; see also RCW 9A.08.010(1)(b)(ii); State v. Johnson, 119 Wash.2d 167, 174, 829 P.2d 1082 (1992).
¶ 20 Here, some evidence must support Keend's theory that he did not recklessly inflict substantial bodily harm. See State v. Wheeler, 22 Wash.App. 792, 797, 593 P.2d 550 (1979). But none does.[8] Instead, on appeal he argues, "A reasonable jury could conclude that a single punch does not create a `substantial risk' of a broken jaw." Br. of Appellant at 11. But as Division One of this court has noted, "Without question, any reasonable person knows that punching someone in the face could result in a broken jaw, nose, or teeth, each of which would constitute substantial bodily harm." R.H.S., 94 Wash.App. at 847, 974 P.2d 1253.
¶ 21 Thus, the evidence was insufficient to support an inference that he unlawfully touched Reeves and yet did not recklessly inflict substantial bodily harm. After all, the evidence of Reeves's injuries and their cause is not disputed. Thus, Keend was not entitled to an instruction on the lesser-included offense of fourth degree assault. And he was not denied effective assistance of counsel when his counsel failed to request such an instruction.

III. Elements of Second Degree Assault
¶ 22 Keend argues that the State's information was constitutionally deficient because it failed to allege an essential *1275 element of second degree assault.[9] In a related argument, Keend argues that the "to convict" instruction omitted an essential element of second degree assault.[10] Br. of Appellant at 15-16. We disagree.
¶ 23 Keend claims that the phrase "not amounting to assault in the first degree" under RCW 9A.36.021(1)(a) requires the State to disprove assault in the first degree. Br. of Appellant at 14-15. To support his argument, Keend relies on State v. Azpitarte, 140 Wash.2d 138, 995 P.2d 31 (2000), in which our Supreme Court reviewed the issue of whether a second degree assault can serve as the predicate assault that enhances violation of a no-contact order from a gross misdemeanor to a felony under former RCW 10.99.040(4) (1998). Azpitarte, 140 Wash.2d at 140, 995 P.2d 31. Former RCW 10.99.040(4) in part provided:
(a) Willful violation of a court order issued under subsection (2) or (3) of this section is a gross misdemeanor except as provided in (b) . . . of this subsection (4). . . .
(b) Any assault that is a violation of an order issued under this section and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony punishable under chapter 9A.20 RCW, and any conduct in violation of a protective order issued under this section that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony punishable under chapter 9A.20 RCW.
(Emphasis added.) In Azpitarte, our Supreme Court ultimately held that "[t]he statute clearly states that second degree assault cannot serve as the predicate to make the violation a felony." Azpitarte, 140 Wash.2d at 141, 995 P.2d 31.
¶ 24 In State v. Ward, 148 Wash.2d 803, 812, 64 P.3d 640 (2003), our Supreme Court clarified Azpitarte, noting that "the purpose of the `does not amount to' [assault in the first or second degree] provision is to elevate no-contact violations to a felony when any assault is committed." Our Supreme Court then explained:
If we were to interpret the statutory language as requiring the State to disprove assault in the first or second degree as an essential element of felony violation of a no-contact order, the defendant would be placed in the awkward position of arguing that his conduct amounts to a higher degree of assault than what the State has charged.
Ward, 148 Wash.2d at 812-13, 64 P.3d 640. Accordingly, our Supreme Court held that the phrase "does not amount to assault in the first or second degree" does not function as an essential element of the felony violation of a no-contact order. Ward, 148 Wash.2d at 813, 64 P.3d 640.[11] Instead, it serves to explain that the State will penalize all assaults committed in violation of a no-contact order as felonies. Ward, 148 Wash.2d at 813, 64 P.3d 640. Thus, Keend's reliance on Azpitarte is misplaced and not compelling because of Ward.
¶ 25 Here, even assuming that the analysis of former RCW 10.99.040 in Azpitarte and Ward is applicable by analogy to an analysis of RCW 9A.36.021(1)(a), we hold that the phrase "not amounting to assault in the first degree" does not function as an essential element of second degree assault. Otherwise, as in Ward, such an interpretation would place Keend in the awkward position of arguing that his conduct amounts to a higher degree of assault than what the State has charged. See Ward, 148 Wash.2d at 813, *1276 64 P.3d 640. Instead, the phrase "not amounting to assault in the first degree" simply serves to explain that the circumstances of second degree assault are distinguished from the circumstances of first degree assault. And because the phrase "not amounting to assault in the first degree" is not necessary to find a person guilty of second degree assault under RCW 9A.36.021(1)(a), we hold that the State properly submitted all elements of the crime to the jury for a finding of guilt beyond a reasonable doubt.

IV. Separation of Powers Doctrine
¶ 26 Keend argues that the judiciary has violated the separation of powers doctrine[12] by defining common law assault. Specifically, Keend asks us to revisit our recent opinion in Chavez, 134 Wash.App. 657, 142 P.3d 1110. But given Keend's argument, we find no basis to revisit or overturn our holding in Chavez.
¶ 27 Affirmed.
We concur: HUNT, and QUINN-BRINTNALL, JJ.
NOTES
[1] Reeves testified that he had never met Keend's sister.
[2] "Whether an act is reckless depends on both what the defendant knew and how a reasonable person would have acted knowing these facts." State v. R.H.S., 94 Wash.App. 844, 847, 974 P.2d 1253 (1999).
[3] In a footnote, Keend also argues that the "knowledge" instruction was confusing and misleading because the instruction's language differed from the statutory language of RCW 9A.08.010(1)(b). Br. of Appellant at 6 n. 3. We already rejected this argument. Gerdts, 136 Wash.App. at 729-30, 150 P.3d 627.
[4] In Goble, we treated the issue of whether the defendant had knowledge of the victim's status as a law enforcement officer as an element of third degree assault solely because the jury instructions in that case included this element. Goble, 131 Wash.App. at 200, 126 P.3d 821. We did not intend to imply that knowledge of the victim's status is normally an element of third degree assault. See Gerdts, 136 Wash.App. at 728, 150 P.3d 627.
[5] Under RCW 9A.36.021(1)(a), a defendant could intend to assault another without knowingly inflicting substantial bodily harm, e.g., a slap of the hand.
[6] The trial court separately defined "knowingly" in instruction 11, but it is not relevant to our analysis. CP at 35.
[7] See RCW 9A.36.041.
[8] For example, Keend did not present any evidence that he lacked actual knowledge that punching someone in the face could result in substantial bodily harm. See R.H.S., 94 Wash. App. at 848-49, 974 P.2d 1253.
[9] A defendant may challenge the sufficiency of a charging document for the first time on appeal. State v. Kjorsvik, 117 Wash.2d 93, 107-08, 812 P.2d 86 (1991).
[10] "[D]ue process requires the State to prove every element of the charged crime beyond a reasonable doubt." State v. Smith, 155 Wash.2d 496, 502, 120 P.3d 559 (2005).
[11] It is puzzling that Keend relies on Azpitarte, but fails to discuss Ward. We note that Ward appears to be controlling legal authority directly adverse to his position, which his lawyer is required to disclose. See RPC 3.3(a)(3).
[12] See State v. Moreno, 147 Wash.2d 500, 505, 58 P.3d 265 (2002) ("The doctrine of separation of powers comes from the constitutional distribution of the government's authority into three branches.").