# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53367-7-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JOSEPH KEITH MCCOURT, | |
| Appellant. | |

MAXA, J. – Joseph McCourt appeals his conviction of third degree assault. The conviction arose from an incident in which Charles Devous demanded that McCourt leave his house, and then the two had an altercation outside in which Devous was injured. McCourt claimed self-defense.

We hold that the trial court erred in declining to give (1) an inferior degree offense instruction on fourth degree assault as an alternative to the charged offense of second degree assault, and (2) a jury instruction stating that McCourt had no duty to retreat in conjunction with self-defense instructions. Accordingly, we reverse McCourt's third degree assault conviction and remand for further proceedings.[1]

---

[1] Because we reverse McCourt's conviction, we do not address McCourt's challenge to certain legal financial obligation provisions.

FACTS

*Background*

In November 2018, McCourt and his girlfriend, Aimee Devous, temporarily moved in with Aimee's brother, Devous, and his wife Leslie.[2] McCourt and Aimee's previous lease ended before they had secured new housing. Devous invited them to stay at his residence until they could find new housing. During that time, McCourt agreed to work for Devous remodeling homes.

On December 7, McCourt and Devous discussed McCourt's compensation. Devous informed McCourt that he miscalculated McCourt's hours and that McCourt would receive less pay than originally anticipated.

*Altercation*

When Devous and McCourt returned to Devous's residence, they got into a heated discussion about McCourt's hours and compensation. Using profanities, Devous yelled at McCourt and told McCourt to look at his work hours. Devous then told McCourt to get out of his house.

McCourt and his young son went outside. McCourt then asked Devous, Aimee, and Leslie if he could go back inside to gather their belongings. They all said yes. McCourt and his son went back inside to collect their possessions. After McCourt and his son exited the house for the second time, Devous followed McCourt outside.

While standing outside on the front porch and using profanity, Devous was carrying either his phone or a piece of paper and told McCourt to look at his hours. McCourt walked

---

[2] This opinion refers to Aimee Devous and Leslie Devous by their first names to avoid confusion with Charles Devous. No disrespect is intended.

toward Devous. At that point, a physical altercation ensued and Devous fell to the ground. Devous sustained a broken clavicle. The State subsequently charged McCourt with second degree assault.

*Jury Trial*

At trial, there was undisputed testimony about most of the events described above except for how Devous was hurt. Devous, Leslie, and Aimee all described one version of how Devous was hurt and McCourt described a different version.

Devous, Leslie, and Aimee testified that when Devous went outside to show McCourt his hours, McCourt quickly charged towards Devous and tackled him to the ground in an area covered in gravel. They said that McCourt fell on top of Devous.

McCourt testified when Devous came out of the house and asked him to look at his hours, McCourt walked up to him. McCourt stated that he believed that Devous was about to strike him. When Devous went to strike him, he grabbed Devous's arm and "tipped him over." Report of Proceedings (RP) at 274. McCourt stated, "[H]e stuck his arm out towards me. I grabbed his arm and pivoted him over." RP at 274. Then McCourt "just let him go and walked away." RP at 274. McCourt stated that he did not mean to hurt Devous, but only wanted to avoid being hit.

McCourt and the State agreed that the trial court should give an inferior degree offense jury instruction on third degree assault. The court stated that it would give that instruction. McCourt also submitted a proposed inferior degree offense instruction on fourth degree assault. The State opposed that proposed instruction.

The trial court declined to instruct the jury on fourth degree assault, stating, "Well, it's very clear from the case law that an assault in the fourth degree, there is no question *based on the*

3

*injury here or the allegations of the injuries here* that there was an assault two committed and, therefore, a lesser of assault in the fourth degree should not be given under the case law." RP at 309 (emphasis added). The trial court, in part, relied on an unpublished decision from this court that the State presented, which suggested that a fourth degree assault inferior degree offense instruction was not appropriate when there was no question that the victim sustained substantial bodily injury.

At McCourt's request, the trial court gave a jury instruction on self-defense. McCourt also proposed a jury instruction stating that there is no duty to retreat when a person is defending an attack in a place where that person has a right to be. The State opposed this instruction on the basis that McCourt had no right to be on the property after Devous told him to leave. The court declined to give a no duty to retreat instruction. The court stated that the "intent of the instruction are homeowners, essentially, defending their property or people that come onto their property." RP at 307.

*Conviction and Sentence*

The jury acquitted McCourt of second degree assault but convicted him of third degree assault. McCourt appeals his conviction.

## ANALYSIS

A.    INFERIOR DEGREE OFFENSE INSTRUCTION

McCourt argues that the trial court erred when it declined to instruct the jury on the inferior degree offense of fourth degree assault because there was evidence from which a jury rationally could find that he did not recklessly inflict substantial bodily harm. Therefore, the evidence would have allowed the jury to convict on fourth degree assault and acquit on second degree assault. We agree.

4

1. Legal Principles

RCW 10.61.003 provides that a jury may find a defendant not guilty of the charged offense but guilty of an offense with an inferior degree. A party requesting an instruction on an inferior degree offense must show:

> "(1) the statutes for both the charged offense and the proposed inferior degree offense proscribe but one offense; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."

*State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)) (internal quotation marks omitted).

The third requirement is the factual component of the test. An inferior degree offense instruction must be given if the evidence would permit a jury rationally to convict *only* on the inferior offense and acquit on the greater offense. *Fernandez-Medina*, 141 Wn.2d at 456.

When determining whether the evidence was sufficient to support an inferior degree offense instruction, we must view the evidence in the light most favorable to the party that requested the instruction. *Id.* at 455-56. However, the evidence must affirmatively establish that the inferior degree offense was committed – "it is not enough that the jury might disbelieve the evidence pointing to guilt." *Id.* at 456.

We review application of the factual component of the inferior degree instruction test for an abuse of discretion. *See State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015) (stating the standard of review in lesser included defense cases). However, the trial court necessarily abuses its discretion if it declines to give an inferior degree instruction when the evidence would permit a jury rationally to convict only on the inferior offense and acquit on the greater offense. *See Fernandez-Medina*, 141 Wn.2d at 456.

There is no dispute in this case that the legal prong of the inferior degree offense instruction test has been met. Fourth degree assault is an inferior degree offense of second degree assault. The question here is whether the factual prong has been satisfied.

2.    Elements of Offenses

The State charged McCourt with second degree assault under RCW 9A.36.021(1)(a). A person is guilty of second degree assault as defined in that statute if the person "[i]ntentionally assaults another and thereby *recklessly* inflicts substantial bodily harm." RCW 9A.36.021(1)(a) (emphasis added). A person acts recklessly when "he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(c). RCW 9A.04.110(4)(b) defines "substantial bodily harm" to mean "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part."

The trial court gave an inferior degree instruction on third degree assault under RCW 9A.36.031(1)(f). A person is guilty of third degree assault as defined in RCW 9A.36.031(1)(f) if the person "[w]ith *criminal negligence*, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering." (Emphasis added.) A person acts with criminal negligence when "he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(d).

6

A person is guilty of fourth degree assault "if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." RCW 9A.36.041(1)[3]. An "assault" includes unlawfully touching another with criminal intent. *State v. Hahn*, 174 Wn.2d 126, 129, 271 P.3d 892 (2012).

In other words, second degree assault requires an intentional assault and both reckless conduct and substantial bodily harm. Third degree assault requires both criminal negligence and bodily harm. Fourth degree assault is an unlawful touching that *either* (1) does not involve either reckless conduct or criminal negligence *or* (2) does not involve substantial bodily harm or bodily harm.

Significant here, if a defendant did not *recklessly* cause harm, then under the plain language of RCW 9A.36.021(1)(a) the defendant cannot be convicted of second degree assault. *See State v. Melland*, 9 Wn. App. 2d 786, 803-05, 452 P.3d 562 (2019) (holding that the State presented insufficient evidence to support a second degree assault conviction when there was no evidence of reckless conduct even though the defendant intentionally assaulted the victim and caused substantial bodily injury); *State v. R.H.S.*, 94 Wn. App. 844, 846-47, 974 P.2d 1253 (1999) (addressing sufficiency of evidence of recklessness even though the defendant conceded an intentional assault and substantial bodily harm). And the seriousness of the injury alone cannot support a finding that the defendant acted recklessly. *See Melland,* 9 Wn. App. 2d at 805.

3. Trial Court Misinterpretation

In declining to give a fourth degree instruction, the trial court focused only on the nature of the injury Devous sustained. The court ruled that "there is no question *based on the injury*

---

[3] RCW 9A.36.041 has been amended since the events of this case transpired. Because these amendments do not impact the statutory language relied on by this court, we refer to the current statute.

*here or the allegations of the injuries here*" that McCourt committed only second degree assault. RP at 309 (emphasis added). The court apparently believed that because Devous's broken clavicle constituted substantial bodily harm, the evidence did not support a conviction of fourth degree assault.

However, the existence of substantial bodily harm is only one requirement of second degree assault. The other requirement is that the defendant *recklessly* inflict substantial bodily harm. As noted above, a defendant cannot be convicted of second degree assault if the defendant's conduct was not reckless. *See Melland,* 9 Wn. App. 2d at 803-05. The trial court ignored this second requirement.

The trial court stated that "it's very clear from the case law" that the State submitted that McCourt was not entitled to a fourth degree assault instruction. RP at 309. The only case the State presented (other than *Fernandez-Medina*, which states only the analytical framework) was an unpublished opinion from this court, *State v. Toston*, No. 49871-5-II (Wash. Ct. App. July 31, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2049871-5-II%20Unpublished%20Opinion.pdf/. In *Toston*, the defendant punched a person in the face and chipped his tooth. *Toston*, No. 49871-5-II, slip op. at 2. This court ruled that the defendant was not entitled to an instruction on fourth degree assault. *Id.* at 7. The court stated that it was undisputed that the victim had sustained a broken tooth. *Id.* "Therefore, there is no evidence that fourth degree assault – an assault that does not result in substantial bodily harm – was committed." *Id.*

In *Toston*, the court focused only on substantial bodily injury because there was no question that the defendant recklessly caused injury – he punched the victim in the face. *See State v. Keend*, 140 Wn. App. 858, 870, 166 P.3d 1268 (2007) (holding that the defendant

recklessly inflicted harm when he punched the victim in the face). *Assuming that the defendant engaged in reckless conduct*, the court in *Toston* was correct that a fourth degree assault instruction was not appropriate when the victim sustained substantial bodily harm. Nevertheless, because the court did not express this assumption, the language used in *Toston* is misleading. Under the plain statutory language, fourth degree assault is not "an assault that does not result in substantial bodily harm." *See Toston*, No. 49871-5-II, slip op. at 7; RCW 9A.36.041(1). Fourth degree assault is an assault that is not reckless or criminally negligent even if it results in substantial bodily harm.

We conclude that the trial court erred in basing its inferior degree offense instruction ruling only on the existence of substantial bodily harm rather than also determining whether the evidence supported a finding that McCourt did not engage in reckless or criminally negligent conduct.

4. Recklessly Inflicting Substantial Bodily Harm

There is no dispute that McCourt intentionally assaulted Devous and inflicted substantial bodily harm. The issue here involves whether McCourt *recklessly* inflicted substantial bodily harm as required in RCW 9A.36.021(1)(a).[4]

Significantly, the question is not whether the evidence even when viewed in the light most favorable to McCourt was sufficient for a jury to find that McCourt recklessly caused

---

[4] The State emphasizes that in the trial court, McCourt never articulated a fourth degree assault instruction as required. The State also notes that McCourt never argued the reckless conduct requirement in the trial court. However, the record shows that the trial court simply announced that it was very clear from the case law that only second degree assault was committed based on Devous's injury. It appears from the record on appeal that McCourt's counsel was not given an opportunity to argue the issue.

significant bodily harm. The question is whether there was evidence that would permit a jury rationally to find that McCourt did not recklessly cause substantial bodily harm and therefore committed only fourth degree assault to the exclusion of second degree assault. *See Fernandez-Medina*, 141 Wn.2d at 456.

As noted above, a person acts recklessly when (1) "he or she knows of and *disregards a substantial risk* that a wrongful act may occur," and (2) "his or her disregard of such substantial risk is a *gross deviation from conduct that a reasonable person would exercise* in the same situation." RCW 9A.08.010(1)(c) (emphasis added). The mental state of recklessness has both a subjective and objective component, which means the State must prove both what the defendant actually knew and how a reasonable person in that situation would have acted. *State v. Rich*, 184 Wn.2d 897, 904, 365 P.3d 746 (2016).

Here, the evidence – viewed in the light most favorable to McCourt – showed that Devous stuck his arm out to strike McCourt. McCourt grabbed Devous's arm to prevent himself from being hit, pivoted Devous, tipped him over, and let him go. McCourt did not intend to hurt Devous; he was only trying to avoid being struck.

The first question is whether McCourt actually knew whether grabbing Devous's arm and tipping him over onto the gravel involved a substantial risk of a wrongful act – that Devous would sustain substantial bodily harm. Arguably, McCourt knew that tipping Devous onto the ground created a substantial risk that Devous might sustain *some* harm. A reasonable person might expect that Devous could suffer minor injuries like scratches, bumps, or bruises. However, neither McCourt nor a reasonable person *necessarily* would know that there was a substantial risk that Devous would suffer substantial bodily injury – "fracture of any bodily part"

10

or sustain "substantial disfigurement" or a "substantial loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(b).

The State cites to *Keend*, where the court held that the defendant was not entitled to a fourth degree assault instruction when he punched the victim and broke his jaw. 140 Wn. App. at 869-70. The court rejected the argument that the defendant did not recklessly inflict substantially bodily harm, stating, " 'Without question, any reasonable person knows that punching someone in the face could result in a broken jaw, nose, or teeth, each of which would constitute substantial bodily harm.' " *Id.* at 870 (quoting *R.H.S.*, 94 Wn. App. at 847). However, grabbing someone by the arm and tipping him over onto the ground clearly does not present the same risk of causing substantial bodily injury as punching someone in the face.

This case is more similar to *Melland*, where the court held that sufficient evidence did not support a second degree assault conviction because there was no evidence that the defendant acted recklessly when he inflicted substantial bodily harm. 9 Wn. App. 2d at 805. In *Melland*, the defendant fractured the victim's finger as he grabbed a phone from her hand. *Id.* at 804-05. The court stated that there was insufficient evidence to prove the mens rea of recklessness. *Id.* at 805. The court explained that evidence of the seriousness of the injury only supported finding that the defendant inflicted substantial harm, but did not show that the defendant acted recklessly in doing so. *Id.*

We conclude that based on the evidence presented by McCourt and viewing the evidence in the light most favorable to McCourt, a jury rationally could find that McCourt did not commit second degree assault because he did not know that there was substantial risk that his conduct would cause substantial bodily injury. And in fact, the jury did acquit McCourt of second degree assault.

11

The second question is whether even if McCourt disregarded a substantial risk that Devous would suffer substantial bodily jury, disregarding that risk was "a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(c). Defending oneself against a blow from another by grabbing the assailant's arm and tipping him to the ground does not *necessarily* constitute a gross deviation from the reasonable person standard. A reasonable person might well do the same thing as McCourt in this situation.

We conclude that based on the evidence presented by McCourt, a jury rationally could find that McCourt did not commit second degree assault because his conduct did not constitute a gross deviation from a reasonable person's conduct in the same situation. Therefore, we hold that the trial court erred in failing to give McCourt's proposed inferior degree instruction on fourth degree assault.

5. Criminal Negligence

We also briefly address third degree assault. This is because the jury found McCourt not guilty of second degree assault, so the State can retry him only for third degree assault.

Third degree assault requires that the defendant act with "criminal negligence." RCW 9A.36.031(1)(f). As noted above, a person acts with criminal negligence when "he or she *fails to be aware of a substantial risk* that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a *gross deviation from the standard of care* that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(d) (emphasis added).

The definition of criminal negligence essentially is the same as the definition of recklessness, except the standard is "failure to be aware" rather than "knows." Therefore, the analysis for the second question for second degree assault discussed above is similar for third degree assault. For the reasons stated above, viewing the evidence in the light most favorable to

McCourt, a jury rationally could find that McCourt did not commit third degree assault and committed only forth degree assault because his conduct did not constitute a gross deviation from a reasonable person's conduct in the same situation.

B.     NO DUTY TO RETREAT INSTRUCTION[5]

McCourt argues that the trial court erred when it declined to instruct the jury, as part of his theory of self-defense, that he had no duty to retreat if he was in a place where he was entitled to be.  We agree.

1.    Legal Principles

Jury instructions are sufficient if, when read as a whole, they state the law correctly and allow the defendant to argue his or her theory of the case.  *State v. Wilson*, 10 Wn. App. 2d 719, 727, 450 P.3d 187 (2019).

A person has no duty to retreat when assaulted in a place where he or she has a right to be.  *In re Pers. Restraint of Harvey*, 3 Wn. App. 2d 204, 215, 415 P.3d 253 (2018).  WPIC 17.05 states this rule:

> It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that [he] [she] is being attacked to stand [his] [her] ground and defend against such attack by the use of lawful force.
>
> [The law does not impose a duty to retreat.]  [Notwithstanding the requirement that lawful force be "not more than is necessary," the law does not impose a duty to retreat.  Retreat should not be considered by you as a "reasonably effective alternative."]

---

[5] Even though we are reversing McCourt's conviction, we address this issue because it likely will arise again on retrial.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.05, at 280 (4th ed. 2016) (WPIC). McCourt's proposed instruction included the first paragraph and the first bracketed sentence.[6]

When a defendant is entitled to a self-defense instruction, a no duty to retreat instruction is required when the jury "may objectively conclude that flight is a reasonably effective alternative to the use of force in self-defense." *State v. Redmond*, 150 Wn.2d 489, 495, 78 P.3d 1001 (2003). "The trial court cannot allow the defendant to put forth a theory of self-defense, yet refuse to provide corresponding jury instructions that are supported by the evidence in the case." *Id.* Conversely, such an instruction is not required when the defendant had no opportunity to retreat. *See State v. Studd*, 137 Wn.2d 533, 549, 973 P.2d 1049 (1999) (instruction not required when the defendant was being held at gunpoint, making retreat an unreasonable alternative).

We generally review a trial court's decisions on jury instructions for an abuse of discretion. *Wilson*, 10 Wn. App. 2d at 727. But when the trial court refuses to give a requested jury instruction based on a ruling of law, then our review is de novo. *Id.*

2.    Right to Be on the Property

The trial court declined to give the proposed no duty to retreat instruction because it believed the purpose of the instruction is to provide homeowners a means to defend their property. The court reasoned that the instruction did not apply to McCourt because he was a temporary guest. However, the doctrine of no duty to retreat is not strictly limited to circumstances that take place in someone's house or on private property. *See Redmond*, 150

---

[6] The instruction's second paragraph has two bracketed alternatives, and generally the trial court must select one of those two alternatives. WPIC 17.05 cmt.

Wn.2d at 491, 495 (instruction required for fight in school parking lot); *State v. Williams*, 81 Wn. App. 738, 740-41, 744, 916 P.2d 445 (1996) (instruction required for homicide in public street).

McCourt argues that he was entitled to a no duty to retreat instruction because he had Devous's express or implied permission to remain on the property. As a result, he asserts that he was an invitee or licensee who had the right to be on the property, not a trespasser. We agree.

Before this incident, McCourt clearly had permission to be in Devous's residence and property based on Devous's express invitation. Devous initially revoked that permission by demanding that McCourt leave the residence, but then allowed McCourt to gather his belongings. Then, before McCourt could leave the property, Devous called him over to look at his hours. Under these circumstances, there was evidence that McCourt still had express or implied consent to be on Devous's property.

3. Retreat as an Issue

The State argues that McCourt was not entitled to a no duty to retreat instruction because there was no evidence that McCourt could have avoided the use of force by retreating. We disagree.

In *Redmond*, two people got into a fight in a high school parking lot. 150 Wn.2d at 491. The defendant testified that he punched the victim in self-defense after the victim approached him with clenched fists. *Id.* Because they were standing in an open parking lot, the court stated that the defendant was entitled to a no duty to retreat instruction because he easily could have retreated. *Id.* at 494-95. It was immaterial that the defendant subjectively did not think he could physically outrun the victim because the facts showed that he objectively had a reasonable opportunity to retreat. *Id.* at 494.

The situation here is analogous to *Redmond*. While standing outside, McCourt could have avoided the use of force by backing away and staying out of reach of Devous when he allegedly started to swing his arms towards him. Devous did not have a weapon that would have prevented a retreat. Therefore, the evidence shows that McCourt had an opportunity to retreat.

We conclude that McCourt was entitled to a no duty to retreat instruction. Therefore, we hold that the trial court erred in failing to give the instruction.

CONCLUSION

We reverse McCourt's third degree assault conviction and remand for further proceedings. On retrial, McCourt will be entitled to both an inferior degree instruction on fourth degree assault and a no duty to retreat instruction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.


We concur:

_____
WORSWICK, P.J.

_____
GLASGOW, J.

16